FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 07, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARIA ELENA REIMERS, USCIS A#097 107V629<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, et al.,<br><br>Defendants. | NO: 2:20-CV-459-RMP<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT, without oral argument, are cross-motions for summary judgment from Defendant United States Citizenship and Immigration Services, et al., ("Defendants"), ECF No. 15, and from Plaintiff Maria Elena Reimers, ECF No. 17. Having reviewed the respective motions, the record, and the relevant law, the Court is fully informed. For the reasons given below, Defendants' Motion for Summary Judgment is granted, and Plaintiff's Motion for Summary Judgment is denied.

/ / /

ORDER RESOLVING CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 1

## BACKGROUND

The following facts are undisputed unless otherwise noted.  Plaintiff, an El-Salvadorian citizen, moved to the United States in 2004 and married Richard Reimers, a U.S. citizen, that same year.  ECF Nos. 16 at 2, 18 at 3–4.  On May 21, 2007, Plaintiff adjusted her status to that of a lawful permanent resident.  ECF No. 16 at 2.  In 2014, Plaintiff and her husband opened a business called "Cannarail Station" in Ephrata, Washington.  *Id.*  Cannarail Station exclusively sells marijuana and marijuana-related paraphernalia.  *Id.*

Plaintiff has worked in several capacities at Cannarail Station, including as a "budtender" who helps answer customer questions and sells the store's marijuana products to customers who are 21 and older.  *Id.* at 4.  Plaintiff also manages the store and orders the store's inventory.  *Id.*

On May 8, 2017, Plaintiff filed a Form N-400 Application for Naturalization ("Form N-400") with the United States Citizenship and Immigration Services ("USCIS").  *Id.* at 2.  Plaintiff checked "no" on Form N-400 to the following question: "Have you EVER: Sold or smuggled controlled substances, illegal drugs, or narcotics?"  *Id.* (citing ECF No. 16-1 at 4).  In an addendum to her naturalization application, Plaintiff explained her answer about having never sold controlled substances by stating that "[t]he answer to this question is somewhat of a gray area federally."  ECF No. 16-1 at 42.  She noted that her and her husband "are legally

licensed in the State of Washington to sell [m]arijuana[,]" and she provided the name and license information for Cannarail Station.  *Id.*

On August 23, 2017, Plaintiff appeared for a naturalization interview.  ECF No. 16 at 2.  The interviewer circled Plaintiff's "no" answer to the question about selling controlled substances and noted that Plaintiff stated that "marijuana is legal in W[ashington] State."  ECF Nos. 16-1 at 39, 18 at 5.  Almost a year later, on May 14, 2018, Plaintiff appeared for a second naturalization interview.  ECF Nos. 16 at 2, at 18 at 5.

At the outset of the second interview, the immigration officer placed Plaintiff under oath and began questioning her about her eligibility for naturalization.  ECF No. 16-1 at 68.  The officer encouraged Plaintiff to say if she needed a question repeated or if she did not understand a question.  *Id.*  Plaintiff agreed that she was appearing voluntarily and could end the interview at any time.  *Id.*[1]  The officer then began asking questions about Plaintiff's self-employment.

---

[1] Before telling Plaintiff that she could end the interview at any time, the USCIS officer stated the following: "I do need to let you know that if you choose not to answer a question, it may reflect negatively on your application."  ECF No. 16-1 at 68.  Plaintiff argues that "the officer only stating that she was free to leave right after stating that if she does not answer questions it may reflect negatively on her, should not be enough to constitute giving voluntary answers."  ECF No. 23 at 6 (citing ECF No. 16-1 at 68).  Plaintiff does not cite any legal authority for this argument.  In light of the absence of authority supporting Plaintiff's position, the

1
2
3
4
5
6
7
8
9
10
11

Plaintiff stated that she is employed at Cannarail Station, a state-licensed marijuana store that she co-owns with her husband. *Id.* at 69. In response, the officer began reading a portion of the Controlled Substances Act ("CSA"), noting that marijuana is a schedule one controlled substance and that the CSA "makes the cultivation, distribution or possession of any amount of marijuana . . . a criminal offense." *Id.* at 70. The officer defined the term "distribution" and set out the specific elements of distribution of a controlled substance as: (1) possession of a controlled substance; (2) that is knowing or intentional; (3) done with the intent to distribute to another person; and (4) results in the knowing distribution of a controlled substance. *Id.*[2] The officer asked Plaintiff if she understood the

12
13
14
15
16
17
18
19
20
21

Court determines that Plaintiff's appearance and the answers given at her naturalization interview were made voluntarily.

[2] Defendants argue that the "USCIS officer listed out the elements as well as the sub-elements of distribution of a controlled substance under 21 U.S.C. § 841(a). ECF No. 22 at 4 (citing ECF No. 16-1 at 70). Plaintiff disputes this claim and counters that the "officer conflated two separate crimes—possession and distribution." ECF No. 24 at 2 (citing ECF No. 1). A review of the transcript shows that the officer first discussed the crime of "possessing a controlled substance unless such substance was obtained directly or pursuant to a valid prescription." ECF No. 16-1 at 70. The officer then noted that the CSA also "makes the cultivation, distribution or possession of any amount of marijuana . . . a criminal offense." *Id.* In mentioning the word "possession" for the latter offense, the officer omitted the additional language that it is unlawful to "possess with

information given to her about the CSA regarding possession and distribution of marijuana and Plaintiff responded, "[n]ot 100 percent." *Id.* Plaintiff stated that she understood the federal law to mean that she could be viewed as "distributing to [an]other person" and the officer restated the elements of the criminal offense under the CSA. *Id.* Plaintiff next asked the officer to spell out the CSA, which the officer did. The officer reminded Plaintiff that she was under oath and was "free to leave at any time." *Id.*

The interview continued and Plaintiff admitted to occasional use of the store's marijuana candies to help her sleep. *Id.* at 71. Plaintiff also described the types of marijuana products sold at the store and her role as a "budtender" and as a business manager. *Id.* at 71–73. In her managerial role, Plaintiff stated that she places orders, checks in inventory, supervises employees, and helps customers. *Id.* at 73. She confirmed that, under Washington State law, all marijuana products sold at the store, other than drug paraphernalia, must contain marijuana. *Id.* at 72. Plaintiff

---

intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a); *see also* ECF No. 16-1 at 70. After reading the separate offenses of possession and distribution, the officer stated the "specific elements of a federal crime of distribution of controlled substances" and proceeded to list the sub-elements as they appear in 21 U.S.C. § 841(a), including that the person "possessed with the intent to distribute to another person." ECF No. 16-1 at 70.

confirmed that she knowingly and intentionally distributes the store's marijuana products to customers who are 21 and older.  *Id.* at 74.

On July 2, 2018, USCIS denied Plaintiff's application for naturalization, finding that Plaintiff's role as co-owner of Cannarail Station made her an "illicit trafficker of a controlled substance."  ECF No. 18-2 at 17.  USCIS noted that although "medical and recreational marijuana possession, distribution, and sale are legal in Washington State under state law," they are illegal under federal law.  *Id.* Citing the Supremacy Clause, USCIS applied federal law in determining Plaintiff's eligibility for naturalization and found that Plaintiff's status as an illicit drug trafficker meant that she lacked "good moral character during the requisite statutory period."  *Id.*

Plaintiff requested a hearing on the denial decision with USCIS, and the decision was affirmed on May 4, 2020.  ECF No. 16 at 3.  Plaintiff filed a complaint for *de novo* review of the denial of her naturalization application with this Court on December 14, 2020.  *See* ECF No. 1.  On July 29, 2021, counsel for Defendants deposed Plaintiff in the presence of Plaintiff's attorney.  ECF No. 16-1 at 11–12. Plaintiff confirmed that she took an oath requiring her to answer all questions asked of her at the deposition fully and honestly.  *Id.* at 9.  Plaintiff also confirmed that the answers she gave during her naturalization interviews were accurate.  *Id.* at 15–16. Counsel for Defendants asked Plaintiff whether she "intentionally sell[s] the marijuana at Cannarail Station" and she answered as follows: "If someone comes

1  and wants to buy a product, we just provide the service." *Id.* at 25–26.   Plaintiff

2  then confirmed that the service she provides are the marijuana products sold at the

3  store. *Id.* at 26.  Counsel for Defendants asked Plaintiff if she knows that marijuana

4  is a controlled substance and she answered, "I do now." *Id.* at 29.  Both parties now

5  move for summary judgment on whether Plaintiff is eligible for naturalization.

6                                      **LEGAL STANDARD**

7        Although the Attorney General is vested with the "sole authority to naturalize

8  persons as citizens of the United States[,]"  8 U.S.C. § 1421(a), district courts have

9  jurisdiction to review the denial of a naturalization application.  8 U.S.C. § 1421(c).

10  "Under § 1421(c), the district court has the last word with respect to denied

11  applications, by conducting its own hearing and reviewing the application de novo."

12  *United States v. Hovsepian*, 359 F.3d 1144, 1162 (9th Cir. 2004) (en banc).

13        Summary judgment is appropriate when "the movant shows that there is no

14  genuine dispute as to any material fact and the movant is entitled to judgment as a

15  matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S.

16  317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  A genuine dispute exists where

17  "the evidence is such that a reasonable jury could return a verdict for the nonmoving

18  party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.

19  Ed. 2d 202 (1986).  A fact is material if it "might affect the outcome of the suit

20  under the governing law." *Id.*  "Factual disputes that are irrelevant or unnecessary

21  will not be counted." *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. If the moving party meets this challenge, the burden shifts to the nonmoving party to "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P 56(e)). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). In deciding a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631–32 (9th Cir. 1987). If the party opposing summary judgment fails to cite specifically to evidentiary materials, the Court need not search the entire record for evidence establishing a genuine issue of material fact or obtain the missing materials. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028−29 (9th Cir. 2001); *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417−18 (9th Cir. 1988). Courts evaluate cross-motions for summary judgment separately and under the same standard. *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

## DISCUSSION

I.    Legal Framework for Naturalization Applications

District courts have authority to grant naturalization applications, which are reviewed pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. Ch. 12.

*See Hovsepian*, 359 F.3d at 1164.  Title 8 U.S.C. § 1427 provides "a number of requirements that a naturalization applicant must meet[,]" including that the applicant, "during the five years immediately preceding the date of filing the application, 'has been and still is a person of good moral character.'"  *Id.* (quoting 8 U.S.C. § 1427(a)(3)).

The INA does not define the term "good moral character," but 8 U.S.C. § 1101(f) provides several factors that preclude a finding of good moral character for naturalization applicants.  Among these factors is the applicant's criminal background, 8 U.S.C. §1101(f)(3), including admission to committing "a violation of (or a conspiracy or attempt to violate) any law or regulation of . . . the United States."  8 U.S.C. § 1182(a)(2)(A)(i)(II).

The naturalization applicant has "the burden of establishing good moral character."  8 U.S.C. § 1427(e); *see also Berenyi v. District Director, INS*, 385 U.S. 630, 637, 87 S. Ct. 666, 17 L. Ed. 2d 656 (1967) ("[I]t has been universally accepted that the burden is on the [noncitizen] applicant to show his eligibility for citizenship in every respect.").  Any doubts to the applicant's eligibility "'should be resolved in favor of the United States and against the claimant.'"  *Id.* (quoting *United States v. Macintosh*, 283 U.S. 605, 626, 51 S. Ct. 570, 576, 75 L. Ed. 1302 (1931), *overruled in part on other grounds by Girouard v. United States*, 328 U.S. 61, 66 S. Ct. 826, 90 L. Ed. 1084 (1946)).  Courts require "strict compliance with the statutory

conditions precedent to naturalization." *Fedorenko v. United States*, 449 U.S. 490,

506, 101 S. Ct. 737, 66 L. Ed. 2d 686 (1981).

II.    De Novo Review and Summary Judgment

This Court conducts a *de novo* review of Plaintiff's application for

naturalization.  8 U.S.C. § 1421(c).  Although USCIS makes the initial decision on

an individual naturalization application, "the district court has the final word and

does not defer to any of the [agency's] findings or conclusions."  *Hovsepian*, 359

F.3d at 1162 (emphasis omitted).  Plaintiff argues that de novo review "does not

mean a district court starts completely from scratch" because the court "must review

[USCIS's] decision."  ECF No. 23 at 3.  However, de novo review requires courts to

"consider the matter anew, the same as if it had not been heard before, and no

decision was previously rendered."  *Ness v. Comm'r of Internal Revenue Serv.*, 954

F.2d 1495, 1497 (9th Cir. 1992) (citing *United States v. Silverman*, 861 F.2d 571,

576 (9th Cir. 1988)).

Applying de novo review, Defendants argue that the Court "need not engage

in fact finding and may dispose of the case by way of summary judgment under

[Federal Rule of Civil Procedure] 56."  ECF No. 15 at 7 (collecting cases).  Plaintiff

concedes that, pursuant to Rule 81(a)(3), the Federal Rules of Civil Procedure apply

in naturalization proceedings, although she maintains that the Court, at Plaintiff's

request, is required to hold a hearing de novo before resolving motions for summary

judgment.  ECF No. 17 at 4 (citing 8 U.S.C. § 1447(a)).  Section 1447(a) states that,

"at the request of the petitioner, [the court shall] conduct a hearing de novo on the application."

The Ninth Circuit has not addressed whether the language of § 1447(a) undermines a court's ability to grant a motion for summary judgment without holding an evidentiary hearing; however, at least two other circuits have rejected such an argument.  *See Chan v. Gantner*, 464 F.3d 289 (2d Cir. 2006) (disagreeing "that the phrase 'hearing *de novo*'. . . implies a bench trial or evidentiary hearing" because "[t]he term 'hearing' has a 'host of meanings' that encompass a wide variety of procedures" (quoting *United States v. Florida E. Coast Railway Co.*, 410 U.S. 224, 239, 93 S. Ct. 810, 35 L. Ed. 2d 223 (1973)); *see also Abulkhair v. Bush*, 413 Fed. Appx. 502, 507 n.4 (3d Cir. 2011) (agreeing with *Chan* in holding that "the district court did not err by failing to hold oral argument before deciding the summary judgment motion" in a proceeding reviewing the denial of the plaintiff's naturalization application).

Additionally, multiple district courts in this circuit have cited the *Chan* decision as persuasive in considering summary judgment motions for naturalization proceedings.  *See Abghari v. Gonzales*, 596 F. Supp. 2d 1336, 1344 (C.D. Cal. 2009) (concluding that "the statutory bar to establishing good moral character makes summary judgment appropriate in this case"); *see also Alenazi v. USCIS*, No. 09CV2053 DMS (POR), 2010 WL 3988744, *2 (S.D. Cal. Oct. 12, 2010) (same);

*and Sabbaghi v. Napolitano*, No. C08-1641Z, 2009 WL 4927902, *3 (W.D. Wash. Dec. 11, 2009) (same).

Here, Plaintiff's interpretation of § 1421(c), similar to the plaintiff in *Chan*, would lead to the "absurd" result that "district courts are required to hold bench trials even when there are no disputed issues of material fact." *Chan*, 464 F.3d at 296. Accordingly, this Court rejects Plaintiff's argument that a bench hearing or evidentiary hearing is required, pursuant to Plaintiff's request, prior to issuing summary judgment. The Court considers both summary judgment motions in turn.

III.    Defendants' Motion for Summary Judgment

Defendants argue that they are entitled to summary judgment because "Plaintiff cannot sustain her burden of proving good moral character" given her admission "to committing the essential elements of federal drug offenses." ECF No. 15 at 7. Noncitizens are precluded from meeting the statutory requirement of good moral character if they "admit to having committed. . . a violation of . . . any law or regulation of . . . the United States." 8 U.S.C. § 1182(a)(2)(A)(II); *see also* 8 U.S.C. § 1101(f)(3) (stating that, for purposes of naturalization proceedings, no person shall be regarded as having good moral character if they are a member of the classes of persons identified in 8 U.S.C. § 1182(a)(2)(A)). The relevant conduct period for an applicant's good moral character is "the five years preceding the filing of the applicant," although the reviewer "may take into consideration . . . the applicant's conduct and acts at any time prior to that period." 8 U.S.C. § 1427(e).

1    Towards the end of Plaintiff's second naturalization interview, she confirmed

2    that, in her capacity as co-owner of Cannarail Station, she knowingly and

3    intentionally distributes marijuana products to customers who are 21 and older.  ECF

4    No. 16-1 at 74.  During Plaintiff's deposition, she again confirmed that she sells

5    marijuana "to anybody over the age of 21 that comes to [her] store."  *Id.* at 22.  The

6    distribution of marijuana or possession with intent to distribute marijuana are federal

7    crimes.  21 U.S.C. §§ 841(a), 802(6), 812(c).  Plaintiff's admission makes her

8    statutorily ineligible for a finding of good moral character and, subsequently,

9    approval of her naturalization application.  8 U.S.C. §§ 1182(a)(2)(A)(II),

10   1101(f)(3).

11   Plaintiff argues that the statutory bar to a good moral character finding does

12   not apply because she did not admit to the essential elements of any federal drug

13   offenses during her naturalization interviews or her deposition.  ECF No. 17 at 9–10.

14   The USCIS Policy Manual, Vol. 12, Pt. F, Ch. 5, Sec. (C)(2), notes that "certain

15   conduct involving marijuana, which is in violation of the CSA, continues to

16   constitute a conditional bar to [good moral character] for naturalization eligibility,

17   even where such activity is not a criminal offense under state law."  The manual

18   continues that the "admission" to such an offense "must meet the long held

19   requirements for a valid 'admission' of an offense."  *Id.* (citing *Matter of K*, 7 I&N

20   Dec. 594, 1957 WL 10581 (BIA 1957)).

21

The *Matter of K* decision, although not binding on this court, states that valid admission of a crime requires that (1) an adequate definition of the crime is provided, including all essential elements, and (2) the crime be explained in understandable terms.  7 I. & N. Dec. at 597.  An admission is valid despite failure to comply with the procedural safeguards for obtaining admissions so long as the applicant "was being questioned under oath, in the presence of his attorney."  *Urzua Covarrubias v. Gonzales*, 487 F.3d 742, 749 (9th Cir. 2007).  Moreover, the USCIS Policy Manual provides that even if a valid admission to a marijuana-related offense is not made, the applicant still "may be unable to meet the burden of proof to show that he or she has not committed such an offense."  USCIS Policy Manual, Vol. 12, Pt. F, Ch. 5, Sec. (C)(2).

At Plaintiff's second naturalization interview, the officer read aloud the portion of the CSA regarding the unlawful possession of a controlled substance.  ECF No. 16-1 at 70.  The officer also stated that the CSA "makes the . . . distribution or possession of any amount of marijuana . . . a criminal offense."  *Id.*  The officer then proceeded to list the sub-elements of the crime of distribution of a controlled substance.  Plaintiff stated that she did not understand "100 percent" and the officer offered to go through the elements of the crime again.  *Id.*  Plaintiff instead asked the officer to spell out the CSA and the officer complied.  Plaintiff gave her testimony voluntarily and under oath.  Although Plaintiff did not have an attorney present at either naturalization interview, she had an attorney present at her deposition when

she affirmed that everything that she had stated during her two interviews was correct. *See* ECF No. 16-1 at 11–12 (Plaintiff identifies her lawyer, who also speaks on the record), 15–16 (Plaintiff confirms that all her answers for her naturalization interviews were "honest").

The Court concludes that both the definition and the elements of the federal crime of distribution of a controlled substance, which includes marijuana, were provided to Plaintiff during the second naturalization interview. Plaintiff argues that the officer conflated the crimes of possession and distribution. ECF No. 24 at 2. In reviewing the transcript, the Court agrees to the limited extent that the officer failed to include the language "with intent to distribute" when initially discussing the term "possession" as it appears in 21 U.S.C. § 841(a). *See* ECF No.16-1 at 70. However, the officer accurately stated the crime of distribution and remedied the omission of the language regarding possession "with intent to distribute" by correctly explaining the sub-elements of the crime of distribution of a controlled substance. *Id.*

Moreover, Plaintiff's argument that she did not understand the crime being read to her is inconsistent with the record. When Plaintiff first applied for naturalization, she knew, at minimum, that there was a conflict between federal and state law regarding the sale of marijuana. *See* ECF No. 16-1 at 42 (Plaintiff's addendum application notes that the question about selling illegal drugs is "somewhat of a gray area federally" and provides the information for her state-licensed marijuana store). In her deposition, Plaintiff stated that she first became

aware that selling marijuana violates federal law during her second naturalization interview. ECF No. 16-1 at 27–28. Regardless of when Plaintiff first understood that marijuana is a controlled substance under federal law, she admitted to learning this fact during the naturalization interview, suggesting that the officer explained the federal law to her in understandable terms. *See* ECF No. 16-1 at 74 (Plaintiff answers "Yes" to the following question: "And you knowingly and intentionally distribute or sell or deliver the [marijuana] product to persons who come into your store?").

Plaintiff separately contends that the officer should have explained "the purpose of the questioning" regarding her job as it related to the officer's good moral character inquiry, ECF No. 23 at 4, but such a requirement exceeds the minimal procedural safeguards established by *Matter of K*. Even if the definitions of the crime or its elements could have been clearer, the Ninth Circuit has determined that such procedural safeguards may be circumvented where the applicant provides sworn testimony in the presence of an attorney. *Urzua Covarrubias*, 487 F.3d at 749. Therefore, Plaintiff's admission to marijuana distribution during her deposition, made under oath and in the presence of her attorney, provides a valid admission to the crime regardless of whether the procedural requirements of *Matter of K* were satisfied either at her naturalization interviews or during her deposition. *See* ECF No. 16-1 at 9, 11–12, 25–26, 29.

The record before the Court supports the factual finding that Plaintiff admitted to committing the federal crime of distribution of a controlled substance (marijuana) based on her operation of the state-licensed marijuana store she co-owns.[3] Therefore, under current law, Plaintiff is statutorily barred from a finding of good moral character, making her ineligible for naturalization.  8 U.S.C. §§ 1101(f)(3), 1182(a)(2)(A).  Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim regarding her eligibility for naturalization.  Given that the Court agrees with Defendants that Plaintiff is statutorily ineligible for naturalization due to her admission to marijuana distribution, the Court does not address Defendants' additional argument that Plaintiff is ineligible due to illicitly trafficking marijuana.

IV.    Plaintiff's Cross Motion for Summary Judgment

For the reasons stated above, the Court denies Plaintiff's assertion that she is entitled to summary judgment because she does not meet all eligibility requirements for naturalization.  Plaintiff validly admitted to committing the federal

---

[3] The Court further observes that the statutory bar to good moral character may apply, even absent a valid admission, where Plaintiff fails to overcome the burden of proving that she did not commit the offense in question.  USCIS Policy Manual, Vol. 12, Pt. F, Ch. 5, Sec. (C)(2).  Although the Court finds that a valid admission was obtained, the statutory bar would still apply given Plaintiff's failure to overcome the burden of proving that she does not distribute marijuana in her role as co-owner of Cannarail Station.

ORDER RESOLVING CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 17

1    crime of distribution of a controlled substance (marijuana), thereby precluding her

2    from qualifying as a person of good moral character.

3         Plaintiff separately argues that application of the statutory bar to good moral

4    character in her case is unconstitutional because (1) the CSA lacks authority under

5    the Commerce Clause to regulate state-licensed marijuana distribution; (2) the CSA

6    violates the Tenth Amendment; and (3) the instant application of the INA's statutory

7    bar to a good moral character finding violates equal protection and due process.

8    ECF No. 17 at 10–21.  The Court addresses these additional arguments in turn and

9    finds that they all lack merit.

10        First, Plaintiff argues that Congress lacks the power to regulate a state-

11   sanctioned marijuana system.  ECF No. 17 at 10–11.  The Supreme Court holds

12   otherwise.  *See Gonzales v. Raich*, 545 U.S. 1, 17, 125 S. Ct. 2195, 162 L. Ed. 2d 1

13   (2005) (reaffirming "Congress' power to regulate purely local activities that are part

14   of an economic 'class of activities' that have a substantial effect on interstate

15   commerce[,]" including the regulation of the cultivation and use of marijuana in

16   compliance with state law).  Plaintiff argues that the rationale in *Raich* "has been

17   completely eroded" for recreational and medicinal use of state-licensed marijuana in

18   the ensuing years as more states have legalized marijuana in some capacity.  ECF

19   No. 17 at 10–11.  Plaintiff further contends that Washington "has its own

20   comprehensive regime that has created a completely intrastate system."  *Id.* at 11.

21   Yet, the Court in *Raich* rejected such an argument.  *See* 545 U.S. at 22 ("That the

regulation ensnares some purely intrastate activity is of no moment.  As we have done many times before, we refuse to excise individual components of the larger scheme.").  Regardless of the changing landscape of the legalization of marijuana in multiple states, this Court will not flout Supreme Court precedent that remains intact.

Plaintiff's remaining argument that "there is no conflict [between Washington state and federal law] under the Supremacy Clause" is inaccurate.  Federal law makes the distribution of marijuana, among other activities, illegal.  21 U.S.C. § 841(a).  Admission to violation of such a law serves as a statutory bar to a finding of good moral character for naturalization applications.  8 U.S.C. §§ 1101(f)(3), 1182(a)(2)(A).  Plaintiff's description of the "careful balance between the CSA and state marijuana law" ignores the fact that distribution of marijuana is illegal under federal law regardless of compliance with an intrastate licensing system.  *See Raich*, 545 U.S. at 29 (declining to limit criminal activity to "marijuana possession and cultivation 'in accordance with state law' because the "Supremacy Clause unambiguously provides that if there is any conflict between federal and state law, federal law shall prevail").

Plaintiff next argues that the Tenth Amendment of the United States Constitution "gives states police and public safety powers" that preempt federal statutes such as the CSA.  ECF No. 17 at 16–17.  Again, under *Raich*, Plaintiff's argument fails.  Following the Supreme Court's decision, the *Raich* case was

1   remanded to the Ninth Circuit, which determined that "Raich failed to demonstrate a

2   likelihood of success on her claim that the [CSA] violates the Tenth Amendment."

3   *See Raich v. Gonzales*, 500 F.3d 850, 867 (9th Cir. 2007) (*Raich* II); *see also id.*

4   ("Generally speaking, . . . a power granted to Congress trumps a competing claim

5   based on a state's police powers."). In the years following *Raich* II, similar Tenth

6   Amendment claims brought by state-licensed marijuana farmers have also failed.

7   *See Montana Caregivers Ass'n, LLC v. United States*, 841 F. Supp. 2d 1147, 1148

8   (D. Mont. 2012) ("Since Congress acted under one of its enumerated powers when it

9   enacted the [CSA], the federal government's enforcement of the Act[, even where

10  Montana law would permit the production and consumption of medical marijuana,]

11  does not violate the Tenth Amendment.") (citing *Raich* II, 500 F.3d at 867).

12      Lastly, Plaintiff brings an as-applied due process[4] and equal protection

13  challenge against the Government based on its disparate enforcement of Title 8 and

14  _____

15  [4] Plaintiff asserts a violation of equal protection and due process under the Fifth

16  Amendment of the United States Constitution. Unlike the Fourteenth Amendment,
    the Fifth Amendment does not contain an Equal Protection Clause. Nevertheless,

17  "the concepts of equal protection and due process, both stemming from our

18  American ideal of fairness, are not mutually exclusive." *Bolling v. Sharpe*, 347
    U.S. 497, 499, 74 S. Ct. 693, 98 L. Ed. 884 (1954). Accordingly, the "approach to

19  Fifth Amendment equal protection claims has always been the same as to equal

20  protection claims under the Fourteenth Amendment." *Weinberger v. Wiesenfeld*,

21  420 U.S. 636, 638 n.2, 95 S. Ct. 1225, 43 L. Ed. 514 (1975) (collecting cases).

the INA, in relation to the CSA, "depending on alienage and nationality." ECF No. 17 at 19. Plaintiff argues that "[t]here is disparate treatment between those who are U.S. citizens and those who have a different national origin or alienage because the federal government does not enforce the CSA fully against citizens as opposed to non-citizens." ECF No. 23 at 9.

Preliminarily, the parties dispute what level of scrutiny applies to Plaintiff's equal protection challenge. Plaintiff asserts that the application of the CSA and INA, together, "targets people of a certain nationality or alienage" so "strict scrutiny is applied." ECF No. 17 at 18 (citing *Graham v. Richardson*, 403 U.S. 365, 372, 91 S. Ct. 1848, 29 L. Ed. 2d 534 (1971)). The Government counters that "[e]qual protection challenges to immigration laws are reviewed under the rational basis standard and upheld 'if they are rationally related to a legitimate government purpose.'" ECF No. 21 at 11 (quoting *Hernandez-Mancilla v. Holder*, 633 F.3d 1182, 1185 (9th Cir. 2011)).

Regardless of the applicable standard of review, the Court concludes that Plaintiff is unable to make a threshold showing of disparate treatment.[5] Plaintiff's argument is premised on the inaccurate assumption that "the constitutionality of

---

[5] The Ninth Circuit directs that courts shall "not proceed to inquire whether the basis of discrimination merits strict scrutiny" until the plaintiff has made the threshold showing of disparate treatment between similarly situated individuals. *Pimentel v. Dreyfus*, 670 F.3d, 1096, 1106 (9th Cir. 2012).

Defendants['] actions must be determined by assessing the INA and CSA together."
ECF No. 23 at 10.  However, Plaintiff challenges the application of the good moral
character bar, a statutory provision under the INA, not the CSA.  Accordingly,
Plaintiff "must show that the defendant [in applying the INA's good moral character
bar] treated the plaintiff differently from similarly situated individuals."  *Pimentel v.
Dreyfus*, 670 F.3d 1096, 1106 (9th Cir. 2012).

A recent district court decision from this Circuit provides helpful parallels to
Plaintiff's instant challenge.  *See Voronin v. Garland*, No. 2:20-cv-7019, 2021 WL
1546957 (C.D. Cal. Aug. 20, 2021).  There, the plaintiff, an asylee who was lawfully
present in the United States, appealed the denial of his application for lawful
permanent resident ("LPR") status.  *Id.* at *1.  Prior to applying for LPR status, the
plaintiff worked as a "handyman" for a California state-licensed medical marijuana
cultivation and distribution center, and he informed USCIS about his job during his
third interview.  *Id.*  USCIS denied the plaintiff's LPR application, based on its
substantial belief that he "aided, abetted, assisted, conspired[,] or colluded in the
illicit trafficking of marijuana."  *Id* at *2.  The plaintiff appealed the decision,
arguing, among other things, that USCIS's decision violated equal protection.  *Id.*  In
dismissing the plaintiff's equal protection claim, the district court held that the
plaintiff "is not similarly situated to the broad population of non-aliens operating
state-licensed marijuana businesses" because non-aliens are not subject to the
admissibility standards of the INA.  *Id.* at *5.

1    Here too, Plaintiff fails to show that she is similarly situated to U.S. citizens

2 who operate state-licensed marijuana businesses because, unlike Plaintiff, the INA

3 admission requirements do not apply to U.S. citizens.  Plaintiff's attempts to

4 distinguish *Voronin* are unavailing as she again incorrectly assumes that "the INA

5 and CSA are inextricably intertwined."  ECF No. 23 at 10.  The statutes are separate

6 and Plaintiff's as-applied challenge concerns only the former statute, not the latter.

7 Even considering Plaintiff's claim as an as-applied equal protection challenge to the

8 CSA, she fails to show that, unlike similarly situated U.S. citizens, she is being

9 federally prosecuted for running a state-licensed marijuana store.  The Court finds

10 that Plaintiff has failed to make a threshold showing of disparate treatment among

11 similarly situated individuals and, accordingly, her equal protection challenge fails. [6]

**CONCLUSION**

13    Defendants have successfully demonstrated that they are entitled to summary

14 judgment.  Plaintiff validly admitted to distributing marijuana in her role as co-

---

[6] As a final point, the Court does not consider Plaintiff's policy-based argument
that the Government "could amend Title 8 and the INA to take out the conditional
bar of good moral character for those non-citizens who own state-sanctioned
marijuana business and legally use marijuana."  ECF No. 17 at 21.  In any case,
Defendants aptly observe that Plaintiff "advocates for disparate application of the
INA," but naturalization standards, as a function of federal immigration law, "must
be applied uniformly across the country."  ECF No. 21 at 10.

owner of a state-licensed marijuana store.  Given that marijuana remains an illicit controlled substance under federal law, Plaintiff's admission bars her naturalization application for lack of good moral character.  8 U.S.C. §§ 1101(f)(3), 1182(a)(2)(A).  Accepting the facts in the light most favorable to Plaintiff, including her alleged confusion between state and federal law, Plaintiff fails to raise any factual issue of genuine dispute or overcome the burden of proving that she did not commit the federal crime of marijuana distribution.

Plaintiff's constitutional arguments challenging the application of the statutory bar to good moral character lack merit.  As established in *Raich*, Congress has authority under the Commerce Clause to regulate the distribution, possession, and manufacture of marijuana among the states.  545 U.S. at 15–17.  Under this same line of precedent, the CSA does not violate the Tenth Amendment.  *Raich* II, 500 F.3d at 867.  Lastly, Plaintiff's as-applied equal protection claim erroneously conflates the INA and the CSA, resulting in a failure to make a threshold showing of disparate treatment among similarly situated individuals.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Defendants' Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

3.    Judgment shall be entered for Defendants.

/ / /

ORDER RESOLVING CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 24

1    **IT IS SO ORDERED**.  The District Court Clerk is directed to enter this

2    Order, enter Judgment for Defendants, provide copies to counsel, and **close this**

3    **case**.

4    **DATED** February 7, 2022.

5

6                                                     _s/ Rosanna Malouf Peterson_
                                                     ROSANNA MALOUF PETERSON
7                                                     Senior United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21